1   HEIDY VAQUERANO (SBN 263167)
    HVaquerano@FoxRothschild.com
2   MEEGHAN H. TIRTASAPUTRA (SBN 325572)
    MTirtasaputra@FoxRothschild.com
3   PAUL BOWLES (*Pro Hac Vice* to be submitted)
    PBowles@FoxRothschild.com
4   FOX ROTHSCHILD LLP
    Constellation Place
5   10250 Constellation Boulevard, Suite 900
    Los Angeles, California 90067
6   Telephone:   310.598.4150
    Facsimile:   310.556.9828
7
    Attorneys for Plaintiffs
8

9                    UNITED STATES DISTRICT COURT

10                   CENTRAL DISTRICT OF CALIFORNIA

11

12
    CRYPTIC SLAUGHTER, a general          Case No. 2:22-cv-03711
13  partnership; ROBERT NICHOLSON,
    an individual; WILLIAM                **COMPLAINT FOR:**
14  TREADWAY, an individual,
                                          **1) Unregistered Trademark**
15              Plaintiffs,                   **Infringement / Federal Unfair**
                                             **Competition / False Designation**
16       v.                                  **of Origin and False Advertising**
                                             **(15 U.S.C. § 1125(a))**
17  LES EVANS, an individual; SCOTT
    PETERSON, an individual; and DOES     **2) Common Law Trademark**
18  1-50,                                     **Infringement**

19              Defendants.               **3) Statutory and Common Law**
                                             **Unfair Competition**
20
                                          **4) Breach of Partnership Agreement**
21                                           **(Cal. Corp. Code § 16405)**

22                                        **5) Breach of Fiduciary Duties**

23                                        **6) Unjust Enrichment**

24                                        **7) Trademark Registration**
                                             **Cancellations (15 U.S.C. §§ 1025,**
25                                           **1064)**

26                                            **DEMAND FOR JURY TRIAL**

27

28

                                    1
                                COMPLAINT
130010458.1

**NATURE OF ACTION**

1.      Plaintiffs Cryptic Slaughter (the "Partnership" or "Cryptic Slaughter"), Robert Nicholson ("Nicholson"), and William Treadway ("Treadway," and collectively with the Partnership and Nicholson, "Plaintiffs") bring this Complaint against Defendants Les Evans ("Evans") and Scott Peterson ("Peterson," and together with Evans, "Defendants") for (i) unregistered trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.;* (ii) common law trademark infringement under California law; (iii) statutory and common law unfair competition under California law; (iv) breach of contract under California law; and (v) breach of fiduciary duties, and alleges as follows:

**THE PARTIES**

2.      Plaintiff Cryptic Slaughter is a partnership organized pursuant to the laws of California.

3.      Plaintiff Robert Nicholson is an individual residing in the State of California.

4.      Plaintiff William Treadway is an individual residing in the State of Texas.

5.      Plaintiffs are informed and believe, and on that basis allege, that Defendant Les Evans is a resident of the State of Washington.

6.      Plaintiffs are informed and believe, and on that basis allege, that Defendant Scott Peterson is a resident of the State of California.

7.      Plaintiffs are informed and believe, and on that basis allege, that Does 1-50 are persons or entities responsible in whole or in part for the wrongdoing alleged herein ("Doe Defendants"). Each of the Doe Defendants participated in, ratified, endorsed, and/or was otherwise involved in the acts complained of, and they have liability for such acts. Plaintiffs will amend this Complaint if and when the identities of such persons or entities and/or the scope of their actions become known.

///

1

## JURISDICTION AND VENUE

2    8.    Pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), this Court has

3 subject matter jurisdiction over Plaintiffs' claims for relief for violation of the

4 Lanham Act. Pursuant to 28 U.S.C. § 1338(b), this Court has supplemental

5 jurisdiction over Plaintiffs' state law trademark infringement claim because it is

6 joined with substantial and related claims under the Lanham Act. This Court also has

7 supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C.

8 § 1367(a) because all of Plaintiffs' claims arise out of a common nucleus of operative

9 facts.

10    9.    This Court has personal jurisdiction over Defendants, and each of them,

11 because (i) Defendants have (a) conducted substantial business in the State of

12 California; (b) derived financial benefits from residents of the State of California,

13 including by marketing and selling infringing products and services to residents of

14 the State of California and otherwise placing infringing products and services into

15 the stream of commerce, with the knowledge or understanding that such products are

16 sold in the State of California, including within this District; (c) purposefully availed

17 themselves of the privilege of conducting business within the State of California; (d)

18 sought protection and benefits from the laws of the State of California; and (ii) the

19 causes of action arise directly from the Defendants' business contacts and other

20 activities in the State of California.

21    10.    Venue in this Court exists under 28 U.S.C. § 1391(b)(2) because a

22 substantial part of the events giving rise to Plaintiffs' claims occurred within this

23 District.

24

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

25

### *The Partnership*

26    11.    The Partnership was formed in or about 1985 for the purpose of being a

27 band and creating music for a profit. Together, Defendants Evans and Peterson, along

28 with Plaintiffs Nicholson and Treadway (collectively, the "Members"), agreed the

3

Partnership would be called "Cryptic Slaughter" (the "Mark"). Since its formation, the Partnership has established longstanding use of the Mark in connection with its products and services, and its extensive marketing, advertising, promotion, and sale of its products and services under the Mark. The Mark has further acquired secondary meaning, whereby the consuming public of this District, the State of California, and the United States associate the Mark with a single source of products and services. The Partnership has possessed, and continues to possess, this Mark as its intellectual property since establishing the Mark in or about 1985.

12.     Through the Members' conduct at that time, they entered into an oral contract governing the activity of the Partnership (the "Partnership Agreement"). Pursuant to the Partnership Agreement, the Members each had a joint and equal interest in the Partnership. Pursuant to the Partnership Agreement, each Member also had a right of joint participation in the management and control of the Partnership.

13.     Since the formation of the Partnership, the Members made decisions collectively and did not pursue a path unless all Members were in agreement. This includes choosing the name of the Partnership, Cryptic Slaughter; whether to re-release records; whether to make merchandise; which designs were appropriate for the Partnership's merchandise; and what vendors were a good fit to sell the merchandise.

14.     At no point in time did one Member have the power to make an executive decision for the Partnership, as no one Member's vote held more weight than another's.

15.     Pursuant to the Partnership Agreement, the Members were expected to, and did, contribute their skills, efforts, and labor to developing and running the Partnership on the condition that the Members would equally share in the ongoing profits and losses of the business.

16.     Specifically, the Partnership was managed by Nicholson and Peterson. The Members entrusted to Nicholson the right, duty, and obligation to account for all

property, earnings, and income acquired and accumulated by the Partnership. On the other hand, Peterson handled the Partnership's public relations by setting up interviews and managing social media accounts. Treadway and Evans did not dispute the structure of the Partnership's management and effectively relinquished the Partnership's managerial duties to Nicholson and Peterson.

17.    Any profits the Partnership made from its albums, touring, or its merchandise were split evenly between the Members. Similarly, any costs or losses the Partnership suffered were felt by all Members. While the Partnership was on tour, for instance, the profit it made was first spent on the Partnership's travel expenses, including gas and accommodations, and food before being equally split between the Members. Similarly, when the Partnership obtained an advance of monies from its record label for its third album, the advance was first used to cover the costs associated with creating the album before being equally divided amongst the Members. The Partnership conducted itself in the same manner with regard to its startup costs associated with designing and creating merchandise, and it continues to conduct itself in this way with any and all royalties it receives from its continuing album sales.

18.    To date, Nicholson continues to distribute any and all royalties received from the sale of the Partnership's albums with no objection from the other Members.

### Defendants' First Breach of the Partnership Agreement

19.    In or about September of 2018, Defendants booked two live performances under the Partnership's name and Mark, "Cryptic Slaughter" (the "First Set of Unauthorized Performances") without consulting with or obtaining approval from Nicholson or Treadway. The First Set of Unauthorized Performances was booked with third-party musicians in place of Nicholson and Treadway, and, on information and belief, Defendants were planning to perform the Partnership's original songs in addition to new songs in the same genre as the Partnership's original songs. This was the first time Nicholson and Treadway learned that Defendants were

attempting to pursue music in the Partnership's name and through the unauthorized and infringing use of its Mark.

20.    Defendants also improperly used the Partnership's name and Mark in their efforts to market and promote the First Set of Unauthorized Performances.

21.    On September 10, 2018, upon learning of the First Set of Unauthorized Performances, Nicholson sent a cease and desist letter to Defendants on behalf of the Partnership, demanding that they stop using the Partnership's name and Mark in connection with the First Set of Unauthorized Performances and that they not enter into any agreements related to or concerning the Partnership without first obtaining approval from Nicholson or Treadway. The cease and desist letter is attached hereto as Exhibit 1.

22.    In response, Defendants agreed to refrain from performing under the Partnership's name and Mark, agreed to cease the unauthorized use of the Mark, and agreed to direct the promoters of the First Set of Unauthorized Performances to do the same. Defendants' written response is attached hereto as Exhibit 2. This agreement and concession by Defendants further substantiates that the Partnership owned, and continues to own, the Mark.

### Defendants' Second Breach of the Partnership Agreement

23.    While Defendants ceased the infringing conduct at that time, their subsequent actions demonstrate that they never meant to permanently comply and instead acted with the bad faith intent to profit by repeating their actions and quietly and unlawfully registering the Partnership's name, "Cryptic Slaughter," as a trademark in their individual names rather than in the Partnership's name.

24.    On or about December 15, 2020, Defendants filed the word mark "Cryptic Slaughter" with the United States Patent and Trademark Office ("USPTO"). Specifically, they registered the name for three types of goods and services as follows: (1) live performances by a musical band and general entertainment (serial no. 90383298), (2) downloadable musical sound recordings (serial no. 90353269),

130010458.1

and (3) t-shirt and hooded sweatshirt merchandise (serial no. 90383328) (the "Infringing Mark").

25.    Neither Nicholson nor Treadway were consulted about the registration of the Infringing Mark nor were they informed that the Infringing Mark had been registered.

26.    Instead, Nicholson and Treadway discovered that Defendants registered the Infringing Mark through an announcement Defendants made on the Partnership's official Instagram account on October 15, 2021. Defendants further announced that they, along with the new band members in place of Nicholson and Treadway, had booked two live performances (the "Second Set of Unauthorized Performances"), during which, upon information and belief, it is planned they will perform the Partnership's original songs in addition to new songs in the same genre as the Partnership's original songs, as follows:



COMPLAINT

130010458.1

founders drummer @Scottyboyp and guitarist @Les_Evans_67 with the addition of guitarist @Matt_Olivo_LA of @Repulsion_band_official, vocalist Brad Mowen (@hovnodemon) best known for his work with The Accused and bassist @MennoVerbaten of Lightning Swords of Death/Behold The Monolith, etc. New material Produced/Mixed by Matt Olivo and Mastered by @Bill_Metoyer, who also produced #CrypticSlaughter's classic albums Convicted and Money Talks, has already been recorded.

CRYPTIC SLAUGHTER® have upcoming performances at @NWTerrorFest in Seattle, WA and @PitFestOfficial in The Netherlands. Stay tuned for tons of new updates!

CRYPTIC SLAUGHTER® is:
Les Evans – Guitars
Scott Peterson –Drums
Brad Mowen - Vocals
Matt Olivo - Guitars
Menno Verbaten - Bass

27.    On October 19, 2021, Nicholson sent Defendants another cease and desist letter on behalf of the Partnership, demanding that Defendants stop use of the Infringing Mark, assign the Infringing Mark to the Partnership, and immediately terminate any agreements related to the Second Set of Unauthorized Performances.

28.    On October 29, 2021, Defendants responded that they would not comply with the demands of Nicholson and Treadway.

29.    Defendants' continued use of the Infringing Mark in commerce violates the Partnership's valuable intellectual property rights in the Mark and associated reputation. Further, Defendants' knowing, intentional, willful, and malicious use of the Infringing Mark is damaging the Partnership, as Defendants are using the Infringing Mark in connection with products and services that are identical and/or closely related to those that the Partnership offers. Furthermore, the Infringing Mark is identical and/or closely related to the Mark in such way that it is likely to cause confusion and violates Plaintiffs' exclusive rights to utilize and exploit the Mark.

///

COMPLAINT

130010458.1

30.    Due to Defendants' continuing willful infringement and unlawful conduct, the Partnership is now forced to bring this Complaint to protect its valuable and longstanding intellectual property rights. The Partnership had to retain counsel and incur substantial fees and costs (and it continues to incur those fees and costs) to prosecute this suit and pursue its claims.

31.    The Partnership's interest in protecting its intellectual property rights from consumer confusion outweigh any harm to Defendants. The public interest is best served by granting the Partnership's requested relief against Defendants.

## FIRST CLAIM FOR RELIEF

**Unregistered Trademark Infringement / Federal Unfair Competition**

**/ False Designation of Origin and False Advertising**

**15 U.S.C. § 1125(a)**

(By Cryptic Slaughter against all Defendants)

32.    Plaintiffs incorporate by reference the factual allegations set forth above.

33.    The Partnership owns the Mark and first used it in or about 1985 when it first formed the Partnership.

34.    In addition, by virtue of the Partnership's longstanding use of the Mark in connection with its products and services, and its extensive marketing, advertising, promotion, and sale of its products and services under the Mark, the Mark has acquired secondary meaning, whereby the consuming public of this District, the State of California, and the United States associate the Mark with a single source of products and services.

35.    The Partnership is the senior user of the Mark as it began use of the Mark in interstate commerce in or about 1985, prior to Defendants' first use of the same Mark in September of 2018.

///

///

COMPLAINT

130010458.1

36.     Defendants do not have authorization, license, or permission from the Partnership to market themselves or sell their products under the Mark or the Infringing Mark.

37.     Defendants were aware of the Mark and the Partnership's use of it, as Defendants are members of the Partnership and created albums and toured with Nicholson and Treadway under the Mark. Thus, Defendants' unauthorized use of the Mark and the Infringing Mark was and is knowing, intentional, and willful.

38.     Through their use of the Mark and the Infringing Mark, including their use of the Partnership's official Instagram account, Defendants intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression, that the Partnership somehow authorized, originated, sponsored, approved, licensed, or participated in Defendants' use of the Mark.

39.     In fact, the Partnership has never authorized, licensed, or given permission to Defendants to use the Mark in any manner.

40.     Defendants' use of the Mark will likely cause confusion as to the origin and authenticity of Defendants' events and related goods and services and will likely cause others to believe that there is a relationship between Defendants and its new band, on the one hand, and the Partnership, on the other hand, when there is, in fact, not.

41.     As a direct and proximate result of Defendants' wrongful conduct, the Partnership has been and will continue to be damaged.

42.     Defendants' actions therefore constitute trademark infringement, as well as false designation of origin, false advertising, and unfair competition.

43.     Unless an injunction is issued enjoining any continuing or future use of the Mark by Defendants, such continuing or future use is likely to continue to cause confusion, mistake, or deception as to source, origin, affiliation, or sponsorship, and will thereby irreparably damage the Partnership.

///

COMPLAINT

130010458.1

44.     Defendants' activities have caused and will continue to cause irreparable harm to the Partnership, for which it has no adequate remedy at law, because: (i) the Mark comprises a unique and valuable property right that has no readily determinable market value; (ii) Defendants' infringement constitutes interference with the Partnership's goodwill and customer relationships, which can be demonstrated by Defendants' unauthorized use and misuse of the Partnership's official Instagram account, and is harming and will continue to substantially harm the Partnership's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to the Partnership, are continuing. Accordingly, the Partnership is entitled injunctive relief pursuant to 15 U.S.C. § 1116(a).

45.     Pursuant to 15 U.S.C. § 1117(a), the Partnership is also entitled to an order: (i) requiring Defendants to account to the Partnership for any and all profits derived from their infringing actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by the Partnership that were caused by Defendants' conduct.

46.     Defendants' conduct was and is intentional and without foundation in law, and, pursuant to 15 U.S.C. § 1117(a), the Partnership is therefore entitled to an award of treble damages against Defendants.

47.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a). Thus, the Partnership is entitled to an award of attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### Common Law Trademark Infringement

(By Cryptic Slaughter against all Defendants)

48.     Plaintiffs incorporate by reference the factual allegations set forth above.

49.     The Partnership has valid and protectable common law rights in the Mark.

130010458.1

50.    The Partnership is the senior user of the Mark.

51.    Defendants' conduct constitutes infringement of the Partnership's common law rights in the Mark.

52.    Defendants' wrongful acts have permitted and will permit them to receive profits based upon the strength of the Partnership's reputation and the substantial goodwill it has built up in the Mark.

53.    As a direct and proximate result of Defendants' wrongful conduct, the Partnership has been and will continue to be damaged.

54.    Unless an injunction is issued enjoining any continuing or future use of the Mark and the Infringing Mark by Defendants, such continuing or future use is likely to continue to cause confusion and thereby irreparably damage the Partnership. The Partnership has no adequate remedy at law. Accordingly, the Partnership is entitled to an injunction.

## THIRD CLAIM FOR RELIEF

### Statutory and Common Law Unfair Competition

(By Cryptic Slaughter against all Defendants)

55.    Plaintiffs incorporate by reference the factual allegations set forth above.

56.    The Partnership has expended significant time and expense in developing the Mark and the high-quality products and services it markets and sells under the Mark. The Mark has been very successful and has developed a substantial reputation and goodwill in the marketplace.

57.    Through their wrongful conduct, Defendants have misappropriated the Partnership's efforts and are exploiting the Mark and the Partnership's reputation to market and sell their services under the Mark. These actions constitute unfair, unlawful, or fraudulent business practices that constitute unfair competition in violation of California Business and Professions Code §§ 17200 *et seq.*

///

12

130010458.1

58.   As a direct and proximate result of Defendants' wrongful conduct, the Partnership has been and will continue to be damaged.

59.   Unless an injunction is issued enjoining Defendants' unfairly competitive conduct, the Partnership will continue to be damaged irreparably. The Partnership has no adequate remedy at law. Accordingly, the Partnership is entitled to an injunction.

60.   Defendants have acted willfully, intentionally and maliciously, such that the Partnership is entitled to punitive damages.

## FOURTH CLAIM FOR RELIEF

**Breach of Partnership Agreement**

**Cal. Corp. Code § 16405**

(By Cryptic Slaughter against all Defendants)

61.   Plaintiffs incorporate by reference the factual allegations set forth above.

62.   Defendants entered into an implied agreement with Nicholson and Treadway to form the Partnership.

63.   Defendants breached the Partnership Agreement through their unauthorized use of the Mark. Specifically, Defendants breached the Partnership Agreement when they registered the Infringing Mark with the USPTO under their individual names rather than that of the Partnership and subsequently used the Mark and the Infringing Mark to promote themselves and their fellow new band members without obtaining permission from Nicholson and Treadway to do so.

64.   Defendants' conduct breaches the Partnership Agreement in that the Mark rightfully belongs to the Partnership and in that there is an implied understanding and agreement that any use of the Partnership's assets must first be approved by a unanimous vote of all Members.

///

///

COMPLAINT

130010458.1

65.     Nicholson notified Defendants of their breach of the Partnership Agreement, but Defendants refused to stop their unauthorized use of the Mark and refused to assign the Infringing Mark to the Partnership.

66.     Defendants' refusal has resulted in damage to the Partnership in that the Mark is being used to promote a band with different members and loss of profits being made off of merchandise and performances based on the goodwill of the Mark and the reputation of the Partnership.

## FIFTH CLAIM FOR RELIEF

### Breach of Fiduciary Duty

(By Nicholson and Treadway against all Defendants)

67.     Plaintiffs incorporate by reference the factual allegations set forth above.

68.     By virtue of the Partnership and the Partnership Agreement between Defendants and Nicholson and Treadway, a mutual fiduciary duty exists.

69.     Defendants thereby owed Nicholson and Treadway a fiduciary duty of loyalty, care, and good faith and fair dealings.

70.     Defendants violated their fiduciary duties to Nicholson and Treadway when Defendants knowingly, willfully, and with conscious disregard of the consequences acted against the interests of the Partnership by, among other things, registering the Infringing Mark in their individual names rather than in the name of the Partnership and subsequently using the Mark and the Infringing Mark to promote themselves and their new band, thereby profiting off the Mark and the Partnership's reputation and goodwill.

71.     Defendants continue to violate their fiduciary duties to Nicholson and Treadway because they refuse to assign the Infringing Mark to the Partnership and refuse to stop using the Mark and the Infringing Mark in connection with the Second Set of Unauthorized Performances and related merchandise.

///

14

130010458.1

72.    As a result of Defendants' conduct, the Partnership has been harmed and continues to be harmed because (i) the Mark comprises a unique and valuable property right that has no readily determinable market value; (ii) Defendants' infringement constitutes interference with the Partnership's goodwill and customer relationships, which can be demonstrated by Defendants' unauthorized use and misuse of the Partnership's official Instagram account, and is harming and will continue to substantially harm the Partnership's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to the Partnership, are continuing.

## SIXTH CLAIM FOR RELIEF

### Unjust Enrichment

(By Cryptic Slaughter against all Defendants)

73.    Plaintiffs incorporate by reference the factual allegations set forth above.

74.    As a result of the wrongful acts of Defendants as alleged above, and each of them, Defendants, and each of them, have been unjustly enriched and benefitted. The Mark is the property of the Partnership, and Defendants are benefitting off of it and the Infringing Mark, including through (i) the value of the commercial use of the Mark and the Infringing Mark, and (ii) the amount of Defendants' revenues and profits attributable to the use of the Mark and the Infringing Mark, as alleged herein.

75.    Defendants, and each of them, are under an obligation to pay the Partnership the entire amount by which they have been unjustly enriched. The Partnership is entitled to the imposition of a constructive trust such that Defendants, and each of them, are involuntary trustees holding all such sums in their possession for the benefit of the Partnership with a duty to transfer the same to the Partnership forthwith.

///

130010458.1

### SEVENTH CLAIM FOR RELIEF

### Cancellation of Trademark Registration, Serial No. 90383298

(By Cryptic Slaughter against all Defendants)

76. Plaintiffs incorporate by reference the factual allegations set forth above.

77. On or about December 15, 2020, Defendants filed the word mark "Cryptic Slaughter" with the USPTO, Serial No. 90383298, for live performances by a musical band and general entertainment.

78. Through their use of the Mark and the Infringing Mark, including their use of the Partnership's official Instagram account, Defendants intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression, that the Partnership somehow authorized, originated, sponsored, approved, licensed, or participated in Defendants' use of the Mark.

79. In fact, the Partnership has never authorized, licensed, or given permission to Defendants to use the Mark in any manner.

80. Defendants' use of the Mark will likely cause confusion as to the origin and authenticity of Defendants' events and related goods and services and will likely cause others to believe that there is a relationship between Defendants and its new band, on the one hand, and the Partnership, on the other hand, when there is, in fact, not.

81. The Partnership has priority of use for the Mark and is the senior user of the Mark.

82. The Partnership believes it is and will be damaged by Defendants' registration of the Marks for live performances by a musical band and general entertainment.

83. Accordingly, the Partnership hereby seeks a judgment directing the Patent and Trademark Office to cancel the trademark Registration Nos. 90383298. ///

COMPLAINT

130010458.1

## **EIGHTH CLAIM FOR RELIEF**

### **Cancellation of Trademark Registration, Serial No. 90353269**

(By Cryptic Slaughter against all Defendants)

84.     Plaintiffs incorporate by reference the factual allegations set forth above.

85.     On or about December 15, 2020, Defendants filed the word mark "Cryptic Slaughter" with the USPTO, Serial No. 90353269, for live performances by a musical band and general entertainment.

86.     Through their use of the Mark and the Infringing Mark, including their use of the Partnership's official Instagram account, Defendants intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression, that the Partnership somehow authorized, originated, sponsored, approved, licensed, or participated in Defendants' use of the Mark.

87.     In fact, the Partnership has never authorized, licensed, or given permission to Defendants to use the Mark in any manner.

88.     Defendants' use of the Mark will likely cause confusion as to the origin and authenticity of Defendants' events and related goods and services and will likely cause others to believe that there is a relationship between Defendants and its new band, on the one hand, and the Partnership, on the other hand, when there is, in fact, not.

89.     The Partnership believes it is and will be damaged by Defendants' registration of the Marks for downloadable musical sound recordings.

90.     Accordingly, the Partnership hereby seeks a judgment directing the Patent and Trademark Office to cancel the trademark Registration Nos. 90353269.

///

///

///

///

COMPLAINT

130010458.1

### NINTH CLAIM FOR RELIEF

### Cancellation of Trademark Registration, Serial No. 90383328

(By Cryptic Slaughter against all Defendants)

91.     Plaintiffs incorporate by reference the factual allegations set forth above.

92.     On or about December 15, 2020, Defendants filed the word mark "Cryptic Slaughter" with the USPTO, Serial No. 90383328, for t-shirt and hooded sweatshirt merchandise.

93.     Through their use of the Mark and the Infringing Mark, including their use of the Partnership's official Instagram account, Defendants intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression, that the Partnership somehow authorized, originated, sponsored, approved, licensed, or participated in Defendants' use of the Mark.

94.     In fact, the Partnership has never authorized, licensed, or given permission to Defendants to use the Mark in any manner.

95.     Defendants' use of the Mark will likely cause confusion as to the origin and authenticity of Defendants' events and related goods and services and will likely cause others to believe that there is a relationship between Defendants and its new band, on the one hand, and the Partnership, on the other hand, when there is, in fact, not.

96.     The Partnership believes it is and will be damaged by Defendants' registration of the Marks for downloadable musical sound recordings.

97.     83.     Accordingly, the Partnership hereby seeks a judgment directing the Patent and Trademark Office to cancel the trademark Registration Nos. 90383328.

///

///

///

18

130010458.1

# **PRAYER**

WHEREFORE, Plaintiffs pray for the following relief:

1.     An injunction ordering Defendants, and their officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them, who receive actual notice of the injunction order by personal or other service, to:

(i)     cease all use and never use the Mark, or any other mark likely to cause confusion with the Mark, including but not limited to the Infringing Mark, in connection with the promotion, advertising, offering for sale, or sale, of any products or services;

(ii)     never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided, or sold by Defendants are in any manner associated or connected with the Partnership, or are licensed, approved, or authorized in any way by the Partnership;

(iii)     never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that Defendants, or any of their goods or services, are related to, authorized, or sponsored by the Partnership;

(iv)     cease all use of the Partnership's domain name and any similar domain names, and never register any domain names that contain the Mark, or any domain names confusingly similar to the Partnership's;

(v)     cease all use of any social media accounts and any similar accounts or social media websites, and never register any social media account that contains the Mark or the Infringing Mark, or any social media account confusingly similar to the Partnership's;

(vi)     never unfairly compete with the Partnership in any manner whatsoever, or engage in any unfair, fraudulent, or deceptive business practices that

130010458.1

relate in any way to the production, distribution, marketing, and/or sale of products and services bearing the Mark or the Infringing Mark;

       (vii)  assign the USPTO registrations of the Infringing Mark to the Partnership; and

       (viii)  never apply for or seek to register any mark that is likely to cause confusion with the Mark.

2.     An order pursuant to 15 U.S.C. § 1116(a), directing Defendants to file with the Court and serve upon the Partnership's counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

3.     An order transferring to the Partnership all domain names in Defendants' possession, custody, or control that include the words "Cryptic Slaughter" or any misspelling thereof, or are otherwise confusingly similar to or contain the Mark. To give practical effect to this order, a further order requiring the Registrar for any of the foregoing domain names to, within fourteen (14) days of receipt of the order, transfer those subject domain names to the Partnership if Defendants have not already done so.

4.     An order transferring to the Partnership all of Defendants' social media accounts, including all such accounts in Defendants' possession, custody, or control that include the words "Cryptic Slaughter" or any misspelling thereof, or are otherwise confusingly similar to or contain the Mark. To give practical effect to this order, a further order requiring the social networking service (e.g., Twitter, YouTube, Instagram, etc.) for any of the foregoing accounts to, within fourteen (14) days of receipt of the order, transfer those subject accounts to the Partnership if Defendants have not already done so.

5.     An order finding that, by the acts complained of above, Defendants have infringed on the Partnership's trademarks in violation of 15 U.S.C. § 1114.

///

6.     An order finding that, by the acts complained of above, Defendants have created a false designation of origin and false representation of association in violation of 15 U.S.C. § 1125(a).

7.     An order finding that, by the acts complained of above, Defendants have engaged in common law trademark infringement.

8.     An order finding that, by the acts complained of above, Defendants have engaged in common law unfair competition, and statutory unfair competition under California Business and Professions Code §§ 17200 et seq.

9.     An order awarding the Partnership damages as follows:

(i)     Pursuant to 15 U.S.C. § 1117(a), the Partnership's actual damages, as well as all of Defendants' profits or gains of any kind from their acts of trademark infringement, false designation of origin, and unfair competition, including a trebling of those damages; and

(ii)     Punitive damages pursuant to California common law.

10.     An order pursuant to 15 U.S.C. § 1117(a) finding that this is an exceptional case and awarding the Partnership its reasonable attorneys' fees.

11.     An order pursuant to 15 U.S.C. § 1117(a) awarding the Partnership all of its costs, disbursements, and other expenses incurred due to Defendants' unlawful conduct.

12.     Imposition of a constructive trust on all monies and sums received by Defendants as a result of their infringement of the Mark and the Infringing Mark, publicity rights and trademarks, with interest thereon at the legal rate.

13.     Cancellation of Plaintiffs' trademark Registration No. 90383298 for live performances by a musical band and general entertainment.

14.     Cancellation of Plaintiffs' trademark Registration No. 90353269 for downloadable musical sound recordings.

15.     Cancellation of Plaintiffs' trademark Registration No. 90383328 for t-shirt and hooded sweatshirt merchandise.

130010458.1

16.   An order for compensatory damages in an amount to be determined at the time of trial from September 1, 2018 to present.

17.   An order for exemplary or punitive damages, according to proof;

18.   An order awarding the Plaintiffs' pre-judgment interest.

19.   An order awarding Plaintiffs such other relief as the Court deems appropriate.

Dated: May 31, 2022                          FOX ROTHSCHILD LLP


                                             /s/ Meeghan H. Tirtasaputra
                                             Heidy Vaquerano
                                             Meeghan H. Tirtasaputra
                                             Paul Bowles (*Pro Hac Vice* to be
                                             submitted)
                                             Attorneys for Plaintiffs

COMPLAINT

130010458.1