1  Nicolas W. Spigner (Bar No. 312295)
SPIEGEL & UTRERA, P.C.
2  8939 S. Sepulveda Blvd., Suite 400
Los Angeles, California 90045
3  Phone: (800) 603-3900
Fax: (800) 520-7800
4  Email: attorneyspigner@amerilawyer.com
*Attorneys for Defendants, LES EVANS and SCOTT PETERSON*
5

6

7                    **UNITED STATES DISTRICT COURT**
                **IN AND FOR THE CENTRAL DISTRICT OF CALIFORNIA**
                           **WESTERN DIVISION**
8

9  CRYPTIC SLAUGHTER, a general          )   **Case Number:  2:22-cv-03711-DMG-JEM**
   partnership; ROBERT NICHOLSON, and    )
10 Individual; and, WILLIAM TREADWAY,    )   **District Judge: Hon. Dolly M. Gee**
   an Individual,                        )   **Magistrate Judge: Hon. John E. McDermott**
11                                        )
           *Plaintiffs*,                  )
12                                        )   **DEFENDANT SCOTT PETERSON'S**
                                          )   **NOTICE OF MOTION AND SPECIAL**
13         vs.                            )   **MOTION TO STRIKE THE COMPLAINT;**
                                          )   **MEMORANDUM OF POINTS AND**
14                                        )   **AUTHORITIES; DECLARATION OF LES**
   LES EVANS, an individual; SCOTT       )   **EVANS**
15 PETERSON, an individual; and, DOES 1- )
   50,                                    )    Complaint Filed: 05/31/2022
16                                        )   Hearing Date:  10/21/2022
           *Defendants*.                  )   Hearing Time:  9:30 a.m.
17                                        )   Room: Zoom
                                          )   Trial Date: Not Set
18                                        )
                                          )
19                                        )
                                          )
20                                        )
                                          )
21 _____   )

22   //

23   //

24

## NOTICE OF SPECIAL MOTION TO STRIKE

PLEASE TAKE NOTICE THAT on October 21, 2022, at 9:30 a.m. or as soon thereafter as the matter may be heard in Courtroom 8C of the above captioned Court, located at 350 West 1st Street, Los Angeles, CA, 90012, Defendant SCOTT PETERSON ("PETERSON") will and hereby does respectfully move this Court for an order pursuant to California Code of Civil Procedure ("CCP") § 452.16, striking Plaintiff CRITIC SLAUGHTER ("CRYPTIC"), Plaintiff ROBERT NICHOLSON ("NICHOLSON"), and Plaintiff WILLIAM TREADWAY's ("TREADWAY") (collectively, "Plaintiffs") Complaint in this action [ECF 1], as to the following state law causes of action against the Defendants for: (2) Common Law Trademark Infringement; (3) Statutory and Common Law Unfair Competition; (4) Breach of Partnership Agreement (Cal. Corp. Code § 16405); (5) Breach of Fiduciary Duties; and (6) Unjust Enrichment ("State Law Claims").

PETERSON also moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) for failure to state a claim for (1) Unregistered Trademark Infringement / Federal Unfair Competition / False Designation of Origin and False Advertising (15 U.S.C. § 1125(a)); (2) Common Law Trademark Infringement; (7) Cancellation of Trademark Registration, Serial No. 90383298 (15 U.S.C. §§ 1025, 1064); (8) Cancellation of Trademark Registration, Serial No. 90353269 (15 U.S.C. §§ 1025, 1064); and, Cancellation of Trademark Registration, Serial No. 90383298 (15 U.S.C. §§ 1025, 1064) ("Fed Law Claims").

This Motion is proper because each cause of action alleged in the Complaint is based upon conduct in furtherance of Defendants' rights to freedom of speech and petition in connection with a public issue, the communication to an official administrative agency of the federal executive branch designed to prompt action by that agency, under the United States and

California Constitutions. Plaintiffs cannot establish, by the required evidentiary showing, that and he causes of action asserted against the Defendants' has a probability of success on the merits.

This Motion will be made on the grounds that California's anti-strategic lawsuit against public participation law ("anti-SLAPP") (CCP §§ 425.16-425.18) directed to pendent state law claims, in federal question cases, are indeed proper. *New.net, Inc. v. Lavasoft*, 356 F.Supp.2d 1090, 1099 (2004). Further, this motion will be made on the grounds that these causes of action arise from acts undertaken in an official proceeding, and that Plaintiffs are therefore required, under CCP § 425.16, to establish a prima facie case, which they cannot do. Additionally, this motion will be made on the grounds that these causes of action each arise from statements made before a federal executive body. CCP § 425.16(e). Further, Plaintiffs will be unable to establish a prima facie case via admissible evidence as to each of these causes of action given that numerous defenses prevent such a showing by Plaintiffs.

NOTICE IS FURTHER GIVEN that, upon the granting of this motion, Defendant will seek an order assessing attorneys' fees and costs against Plaintiff in an amount to be determined under the procedures of CCP § 425.16(c), the amount constituting the reasonable attorneys' fees and costs incurred by Defendant in connection with this action.

This Motion will be made on the grounds that Plaintiff's have failed to State a Claim for relief regarding the Fed Law Claims pursuant to FRCP 12(b)(6), because as alleged co-owners of a trademark, Plaintiff's cannot maintain an infringement action against other alleged co-owners.

This motion is based on this notice, the attached memorandum of points and authorities; the declarations filed concurrently herewith; the complete files and records of this action; and such further evidence and argument as may be presented at the hearing of this motion.

1

### **MEET AND CONFER DECLARATION**

2          Pursuant to Fed. R. Civ. P. 7 (C.D. Cal. LR 7-3), this Motion is made following an

3   attempt at informal resolution of this matter during multiple conferences with Plaintiff's.

4   Specifically, Defendant's counsel and Plaintiff's counsel discussed the basis of this Motion

5   telephonically on August 12, 2022.

6

7   DATED:  September 22, 2022                    Respectfully Submitted:

8

                                          _____*/s/ Nicolas Spigner*_____
9                                          **Nicolas W. Spigner**, for the firm
                                          Spiegel & Utrera, P.C.
10                                         8939 S. Sepulveda Blvd., Suite 400
                                          Los Angeles, California 90045
11                                         Phone: (800) 603-3900
                                          Fax: (800) 520-7800
12                                         *Attorneys for Defendants, LES EVANS and*
                                          *SCOTT PETERSON*

13

14

15

16

17

18

19

20

21

22

23

24

Motion to Strike (Anti-SLAPP)
**2:22-cv-03711-DMG-JEM**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.
### SUMMARY OF RELEVANT FACTS

Cryptic Slaughter (the "Band") is a musical band founded by EVANS in 1984 when he was 17 years old. *Evans Declaration*, ¶ 5. EVANS invited guitar player Adam Scott to join the Band in April of 1984, drummer Scott Peterson in June 1984, and bass player/vocalist Bill Crooks in October of 1984. *Evans Declaration*, ¶ 6. Shortly thereafter, Adman Scott was left the Band. *Evans Declaration*, ¶ 7. On May 15, 1985, the three member Band released the five-song demo album "Life in Grave". *Evans Declaration*, ¶ 8. In September of 1985, the Band signed a five-album record contract with Metal Blade Records. *Evans Declaration*, ¶ 8. As EVANS was the only Band member 18 or over, he was the only one who signed the contract. *Evans Declaration*, ¶ 8. The album artwork for "Life in Grave" shows that the band only consisted of 3 members when it was originally recorded and released in 1985. *Evans Declaration*, ¶ 9. In October and November of 1985, the Band recorded the song "Reich of Torture" for the Metal Blade Records Metal Massacre VII compilation, which was released in January, 1986. *Evans Declaration*, ¶ 10.

After the Band's debut album "Convicted" was written, but before it was recorded, EVANS invited NICHOLSON to join the Band as a bassist, in December of 1985. *Evans Declaration*, ¶ 11. While NICHOLSON was a member, the Band released the albums "Convicted" in July 1986, "Money Talks" in May, 1987, and "Stream of Consciousness" in August, 1988. *Evans Declaration*, ¶ 11. In various posts on his Instagram account, NICHOLSON states that he first performed with the Band in 1986, and the first album he recorded was "Convicted", not the Band's first album, "Life in Grave". *Evans Declaration*, ¶ 12.

Motion to Strike (Anti-SLAPP)
**2:22-cv-03711-DMG-JEM**

In August of 1988, the Band disbanded. *Evans Declaration*, ¶ 13. As EVANS was still under contract with Metal Blade Records, he reformed the Band in Portland, Oregon with new members: drummer Brian Lehfeldt, vocalist Dave Hollingsworth, and bass player Bret Davis. *Evans Declaration*, ¶ 13. With its new line-up, the Band released its fourth album, "Speak Your Peace" in June of 1990. *Evans Declaration*, ¶ 14. On September 19, 1990, the Band performed at a concert in Portland, OR, where NICHOLSON played a song with the Band as a former member. *Evans Declaration*, ¶ 15. NICHOLSON was not an original member of the Band having joined in December of 1985, and he is no longer a member of the Band, having left in 1989. *Evans Declaration*, ¶ 16. NICHOLSON and TREADWAY did not retain any interest in the Band after they left. *Evans Declaration*, ¶ 16.

## II.
## <u>LEGAL ARGUMENT</u>
## DEFENDANTS ARE ENTITLED TO AN ANTI-SLAPP REMEDY IN THIS ACTION

In addition to the federal question claims contained in the Complaint that are asserted against PETERSON, Plaintiffs have alleged various pendant state law claims against Defendant. Specifically, Plaintiff has alleged state law causes of action for (2) Common Law Trademark Infringement; (3) Statutory and Common Law Unfair Competition; (4) Breach of Partnership Agreement (Cal. Corp. Code § 16405); (5) Breach of Fiduciary Duties; and (6) Unjust Enrichment.

**1. Legal Standard**

A strategic lawsuit against public participation ("SLAPP") suit is one in which a defendant may move to strike a state law claim if the plaintiff's injury arises from any act of that defendant in furtherance of the defendant's right of petition or free speech under the California or United States Constitutions in connection with a public issue. *Vess v. Ciba-Geigy*

Motion to Strike (Anti-SLAPP)
**2:22-cv-03711-DMG-JEM**

1    *Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003). The statute provides that a defendant may

2    move to strike a plaintiff's complaint if it "aris[es] from any act of that person in furtherance of

3    the person's right to petition or free speech under the United States or California Constitution in

4    connection with a public issue." *Cal. Civ. Proc. Code* § 425.16(b). The statute is to be "broadly

5    construed" so as to protect speech. *Id.* § 425.16(a). California's anti-SLAPP statute was "enacted

6    to allow early dismissal of meritless first amendment cases aimed at chilling expression through

7    costly, time-consuming litigation." *United States ex rel. Newsham v. Lockheed Missiles & Space*

8    *Co.,* 190 F.3d 963, 970 (9th Cir.1999) (legislature passed anti-SLAPP statute "in response to [its]

9    concern about civil actions aimed at private citizens to deter or punish them for exercising their

10   political or legal rights"). As defined in the statute, an

11           "act in furtherance of a person's right of petition or free speech under the United
12           States or California Constitution in connection with a public issue" includes: (1)
             any written or oral statement or writing made before a legislative, executive, or
13           judicial proceeding, or any other official proceeding authorized by law, (2) any
             written or oral statement or writing made in connection with an issue under
14           consideration or review by a legislative, executive, or judicial body, or any other
             official proceeding authorized by law, (3) any written or oral statement or writing
15           made in a place open to the public or a public forum in connection with an issue
             of public interest, or (4) any other conduct in furtherance of the exercise of the
16           constitutional right of petition or the constitutional right of free speech in
             connection with a public issue or an issue of public interest."

17   *Cal. Civ. Proc. Code* § 425.16(e).

18           The anti–SLAPP statute requires a court to undertake a two-step process in determining

19   whether to grant a motion to strike. *See Id*. § 425.16. First, "[a] defendant filing an anti–SLAPP

20   motion to strike must make an initial prima facie showing that the plaintiff's suit arises from an

21   act in furtherance of defendant's right of petition or free speech." *Bosley Medical Inst., Inc. v.*

22   *Kremer*, 403 F.3d 672, 682 (9th Cir. 2005). "If the court finds the defendant has made the

23   requisite showing, the burden shifts to the plaintiff to establish a 'probability' of prevailing on

24

1  the claim by making a prima facie showing of facts that would, if proved, support a judgment in

2  the plaintiff's favor." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 906 (Ct. App. 2002).

3    **2.  The Filing of a Trademark Application is Protected by the Anti-SLAPP Statute**

4        The law is clear that the act of filing a trademark application with the U.S. Patent

5  and Trademark Office ("USPTO") is protected by the anti-SLAPP statute as a writing made

6  before an executive or other official proceeding authorized by law. *Id.*; *Mindys Cosmetics, Inc. v.*

7  *Dakar*, 611 F.3d 590, 596 (9th Cir. 2010) (concluding that the filing of a trademark application is

8  protected by the anti-SLAPP statute as a "writing made before ... [an] executive [or] ... other

9  official proceeding authorized by law" and may also be a "writing made in connection with an

10 issue under consideration ... by ... [an] executive ... body, or any other official proceeding"). A

11 defendant who satisfies its initial burden of demonstrating the targeted action is one arising from

12 protected activity faces no additional requirement of proving the plaintiff's subjective

13 intent. *Navellier v. Sletten*, 29 Cal.4th 82, 88(Cal. Sup. Ct. 2002) (citations). Nor need a moving

14 defendant demonstrate that the action actually has had a chilling effect on the exercise of such

15 rights. *Id.* (citations).

16        Here, the State Law Claims arise out of and are based on the Defendants' filing of

17 trademark applications. [ECF 1, ¶ 24] Defendants filed 3 separate word mark applications for the

18 mark "Cryptic Slaughter": (1) Reg. No. 90383928 for live performances by a musical band; (2)

19 Reg. No. 90353269 for downloadable music recordings; and, (3) Reg. No. 90383328 for clothing

20 merchandise (collectively, the "Mark"). [ECF 1, ¶ 24]. In their complaint, Plaintiffs ground their

21 State Law Claims  on Defendants use of the Mark, including filing the Mark applications. [ECF

22 1, at ¶¶ 24, 48, 51-55, 57, 61, 63-65, 67, 70-71 73-74, ]. As such, Defendants unquestionably

23

24

Motion to Strike (Anti-SLAPP)
**2:22-cv-03711-DMG-JEM**

satisfy the first prong by establishing that the State Law claims arise form the filing of a trademark application, free speech protected by the anti-SLAPP statute.

**3. Plaintiffs Cannot Establish a Probability of Prevailing on Their Claims**

At the second step of the anti-SLAPP inquiry, the burden shifts to Plaintiffs to show a probability of success. *Navellier* , 29 Cal.4th at 95. To satisfy this second prong, Plaintiff "must show a 'reasonable probability' of prevailing in its claims for those claims to survive dismissal." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir.2001). The court is to consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Cal.Civ.Proc.Code* § 425.16(b)(2).

**a. Common Law Trademark Infringement; and, Statutory and Common Law Unfair Competition**

Plaintiffs cannot prevail on their trademark claims as NICHOLSON and TREADWAY are not members of the Band, and former members have no standing to sue current members on behalf on the Band they are no longer members of. *See, e.g., HEC Enters., Ltd. v. Deep Purple, Inc.,* 213 U.S.P.Q. 991 (C.D.Cal.1980) (former members of a group prohibited from performing under the band's name when members of the original group, with certain replacement members, continued to use the name). On the other hand, it has also been held that a person who remains continuously involved with the group and is in a position to control the quality of its services, such as EVANS retains the right to use of the mark. *See Rick v. Buchansky,* 609 F.Supp. 1522 (S.D.N.Y.1985).

Moreover, even if NICHOLSON and TREADWAY are members of the Band, the Band can't enjoin its other members, EVANS and PETERSON, from using the Mark. In the absence of an agreement to the contrary, no one partner would have the right to prevent another former partner from using the mark. See, e.g., *Caswell v. Hazard*, 121 N.Y. 484, 494 (1890) (each

former partner entitled to use the trademark); *Oklahoma Beverage Co. v. Dr. Pepper Love Bottling Co.*, 565 F.2d 629 (10th Cir. 1977) (assuming that partners have equal right to use mark after dissolution, that right must be perfected by continuing use); *Cornaby's LLC v. Carnet, LLC*, 2017 WL 3503669, *8 (D. Utah 2017) (assuming the partners had joint ownership of the mark after partnership dissolution, Janet's subsequent 10 years of non-use was an abandonment of her rights in the mark).

Here, Plaintiffs' first Cause of Action for Unregistered Trademark Infringement / Federal Unfair Competition / False Designation of Origin and False Advertising, and Seventh through Ninth Causes of Action for Trademark Cancellation are subject to dismissal because they allege joint ownership as partners of PETERSON, with equal rights to use the Band's intellectual property. [ECF 1, ¶¶ 11-17, 33-35].

   ***b.  The Statutes of Limitations for the Trademark Infringement, Breach of Partnership Agreement (Cal. Corp. Code § 16405); Breach of Fiduciary Duties; and Unjust Enrichment Causes of Action Expired Before the Complaint Was Filed***

"The Lanham Act contains no explicit statute of limitations. When a federal statute lacks a specific statute of limitations, we generally presume that Congress intended to 'borrow' the limitations period from the most closely analogous action under state law." *Jarrow Formulas, Inc. v. Nutrition Now, Inc*., 304 F.3d 829, 8336 (9th Cir. 2002) (citations omitted). The Ninth Circuit has concluded that "the four-year limitations period from California trademark infringement law ... was the correct period to use." *Internet Specialties West, Inc. v. Milon-DiGiorgio Enters.*, 559 F.3d 985, 990 n.2 (9th Cir. 2009); *Miller v. Glenn Miller Prods., Inc*., 454 F.3d 975, 997 n.11 (9th Cir. 2006) ("The California statute of limitations for breach of contract claims, statutory right of publicity claims, state trademark infringement and/or dilution claims, and state unfair competition claims is four years. *See Cal. Civ. Proc. Code* §§ 337, 343.

1    The Statute of limitations for a breach of an oral contract is two years. *Id.*, at § 339.

2    California law provides a three-year limitations period for unjust enrichment claims and a two-

3    year limitations period for quantum meruit claims. *See Id.*, at §§ 338(d), 339; *Fed. Deposit Ins.*

4    *Corp. v. Dintino*, 167 Cal. App. 4th 333, 347–48, 84 Cal.Rptr.3d 38 (2008) (holding that a three-

5    year statute of limitations applies to an unjust enrichment cause of action based on fraud or

6    mistake, pursuant to *Cal. Civ. Proc. Code* § 338); *Iverson, Yoakum, Papiano & Hatch v.*

7    *Berwald*, 76 Cal. App. 4th 990, 996, 90 Cal.Rptr.2d 665 (1999) (holding that a two-

8    year statute of limitations applies to a cause of action for quantum meruit, pursuant to *Cal. Code*

9    *Civ. Proc.* § 339*). BASF Corp. v. Cesare's Collision Repair & Towing, Inc*., 364 F. Supp. 3d

10   1115, 1122 (E.D. Cal. 2019)

11   Plaintiffs allege that the partnership was created by an oral agreement among the parties

12   [ECF 1, ¶ 12]. Plaintiffs further allege that they first learned that Defendants breached the

13   partnership agreement in September of 2018 [ECF 1, ¶ 19]. However, NICHOLSON was

14   actually aware of the alleged conduct giving rise to the infringement, performing under the name

15   of the Band, when he performed a song with the Band as a former member in 1990. As such, the

16   applicable statutes of limitation have long since expired.

17        **c.   *Plaintiff's Failed to State a Claim for Trademark Infringement***

18   It is settled law that band members, and former-band members cannot sue each other for

19   trademark infringement. *Puri v. Yogi Bhajan Admin. T*r., No. CV 11-9503 FMO (SHX), 2015

20   WL 12684464, at *11 (C.D. Cal. Oct. 30, 2015). A co-owner cannot infringe the mark it owns."

21   *Khalsa v. Puri*, 344 P.3d 1036, 1045 (N.M. 2015) (citation and internal quotation marks

22   omitted).  Courts that have addressed the issue of co-ownership of trademarks and have held that

23   a trademark co-owner does not infringe upon his co-owners rights by exercising his own right of

24

1   use. See *Derminer v. Kramer*, 406 F.Supp.2d 756 (E.D. Mich. 2005); *Piccari v. GTLO Prods.,*

2   *LLC*, 2015 WL 3885023 (E.D. Pa. 2015).   If a group has disbanded, it is no different than any

3   other partnership. Traditionally, courts have treated a trademark as just another piece of property

4   to be sliced up and apportioned upon dissolution.

5         Here, Plaintiffs' first Cause of Action for Unregistered Trademark Infringement / Federal

6   Unfair Competition / False Designation of Origin and False Advertising, and Seventh through

7   Ninth Causes of Action for Trademark Cancellation are subject to dismissal because they allege

8   joint ownership as partners of the Defendants, inasmuch as its is alleged PETERSON is a

9   member of the Band, and has equal ownership rights [ECF 1, ¶¶ 11-17, 33-35]. As the Plaintiffs

10   have not alleged the existence of any agreement to the contrary, they do not have the right to

11   prevent PETERSON from performing, releasing music, and otherwise using the Band's name.

12        ***d.   The Court Should Dismiss The State Law Claims for Lack of Subject Matter***
             ***Jurisdiction***

13
14      "[I]n any civil action of which the district courts have original jurisdiction, the district

15   courts shall have supplemental jurisdiction over all other claims that are so related to claims in

16   the action within such original jurisdiction that they form part of the same case or

17   controversy..." 28 U.S.C. § 1367(a). However, the power to exercise supplemental jurisdiction is

18   within the court's discretion. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726

19   (1966). The court "may decline to exercise supplemental jurisdiction over a claim under

20   subsection (a) if ... the district court has dismissed all claims over which it has original

21   jurisdiction[.]" 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715,

22   726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not

23   insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Acri v.*

24   *Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (*en banc*) ("[I]n the usual case in which

all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims.' ").

Here, because Plaintiffs' sole federal claims are based on Trademark Law and subject to dismissal, this Court should exercise its discretion and dismiss the remaining state law claims, should any survive.

### III.
### CONCLUSION

For the foregoing reasons, Defendant SCOTT PETERSON by and through his undersigned counsel of record, SPIEGEL & UTRERA, P.C., hereby, respectfully request that the Court grant the foregoing Motion to Strike, along with any such further relief as the Court may deem as necessary and in the interests of justice, including costs and reasonable attorney fees.

DATED:  September 22, 2022                    Respectfully Submitted:


                              _____*/s/ Nicolas Spigner*_____
                              **Nicolas W. Spigner**, for the firm
                              Spiegel & Utrera, P.C.
                              8939 S. Sepulveda Blvd., Suite 400
                              Los Angeles, California 90045
                              Phone: (800) 603-3900
                              Fax: (800) 520-7800
                              *Attorneys for Defendants, LES EVANS and*
                              *SCOTT PETERSON*

1

**<u>CERTIFICATE OF SERVICE</u>**

2

3
    I hereby certify that on September 22, 2022, I electronically filed the foregoing document

4
with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being

5
served this day on all counsel of record or pro se parties identified below, either via transmission

6
of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner, as

7
specified, for those counsel or parties who are not authorized to receive electronically Notices of

8
Electronic Filing.

    Parties Served:

9

10
    Heidy Vaquerano
    Meeghan H. Tirtasaputra
11
    Paul Bowles
    FOX ROTHSCHILD LLP
12
    Constellation Place
    10250 Constellation Boulevard, Suite 900
13
    Los Angeles, California 90067
    PBowles@FoxRothschild.com
14
    HVaquerano@FoxRothschild.com
    MTirtasaputra@FoxRothschild.com
15
    *Attorney for Plaintiffs CRYPTIC SLAUGHTER,*
    *ROBERT NICHOLSON, WILLIAM TREADWAY*
16

17

18
DATED: September 22, 2022                    By: */s/ Nicolas Spigner*  _
                                                 Nicolas Spigner
19

20

21

22

23

24

Motion to Strike (Anti-SLAPP)
**2:22-cv-03711-DMG-JEM**