UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 22-3711-DMG (JEMx)** | Date | May 5, 2023 |
| Title | ***Cryptic Slaughter, et al. v. Les Evans, et al.*** | Page | 1 of 9 |

Present: The Honorable DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| KANE TIEN | NOT REPORTED |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANTS' MOTIONS TO STRIKE [39, 51] AND TO DISMISS FOR FAILURE TO STATE A CLAIM [40, 50]**

In this action, Plaintiffs Cryptic Slaughter, Robert Nicholson, and William Treadway assert seven claims against Defendants Les Evans and Scott Peterson, including federal trademark infringement claims, and state law claims for unfair competition, breach of partnership agreement, breach of fiduciary duties, and unjust enrichment. [Doc. # 1 ("Compl.").]

On September 22, 2022, Peterson filed the instant motions to strike Plaintiffs' Complaint under California's anti-SLAPP law, and to dismiss it under Rule 12(b)(6) for failure to state a claim. [Doc. # 39 ("MTX"), 40 ("MTD").] The motions are fully briefed.[1] [Doc. ## 43 ("MTX Opp."), 46 ("MTD Opp."), 60 ("MTX Reply"), 61 ("MTD Reply").]

Having carefully considered the parties' written submissions, the Court **DENIES** Defendants' motions.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND[2]

In or about 1985, Defendants Evans and Peterson, along with Plaintiffs Nicholson and Treadway, formed a band they called "Cryptic Slaughter." Compl. ¶ 11. The Complaint alleges that in doing so, they also formed a legal Partnership via oral agreement (the "Partnership Agreement"), based on the members' conduct at the time. *Id.* Each member had a joint and

---

[1] After the Court set aside the Clerk's entry of default as to Evans, he also filed apparently identical motions to strike and dismiss the Complaint. [Doc. ## 50, 51.] The same Opposition and Reply briefs were filed in response to those motions, so there are four pending motions but the Court will cite to Peterson's motions throughout this order for the sake of clarity. [Doc. ## 58, 59, 63, 64.] This ruling applies to all four of these motions.

[2] The facts stated herein are drawn from Plaintiffs' Complaint. The Court assumes the truth of those allegations solely for the purpose of deciding the motions to dismiss.

equal interest in the Partnership, and they made decisions collectively. *Id.* ¶¶ 12–13. Nicholson and Peterson managed the Partnership, and were entrusted with "the right, duty, and obligation to account for all property, earnings, and income acquired and accumulated by the Partnership." *Id.* ¶ 16. Peterson "handled the Partnership's public relations by setting up interviews and managing social media accounts." *Id.* The remaining two members, Treadway and Evans, did not dispute any aspect of this management structure. *Id.* ¶ 17. All profits and losses the Partnership made through 2018 were split evenly between the members. *Id.*

The first alleged breach of the Partnership Agreement came in or about September 2018. At that time, Defendants booked and promoted two live performances under the name "Cryptic Slaughter" without consulting with Nicholson and Treadway. *Id.* ¶¶ 19–20. Upon learning of this performance, Nicholson sent a cease-and-desist letter to Defendants on behalf of the Partnership, demanding they stop using its name and mark for their performances and that they not enter into any agreements relating to the Partnership without obtaining approval from Nicholson and Treadway first. *Id.* ¶ 21. Evans and Peterson responded and agreed to refrain from future use of the Partnership's name and mark. *Id.*

On or about December 15, 2020, Evans and Peterson filed the name mark "Cryptic Slaughter" with the U.S. Patent and Trademark Office ("USPTO"). *Id.* ¶ 24. They registered the name for three types of goods and services: (1) live performances by a musical band and general entertainment; (2) downloadable musical sound recordings; and (3) t-shirt and hooded sweatshirt merchandise. *Id.* ¶ 24. Nicholson and Treadway were unaware that Evans and Peterson had registered the "Cryptic Slaughter" mark until an announcement on the Partnership's official Instagram account on October 15, 2021. *Id.* ¶ 26. The announcement implied that they planned to perform Cryptic Slaughter's original songs and tour under that name. *Id.*

On October 19, 2021, Nicholson sent Evans and Peterson another cease-and-desist letter on behalf of the Partnership. *Id.* ¶ 27. Ten days later, Evans and Peterson responded that they would not comply with the letter's demands. *Id.* ¶ 28. To date, Defendants continue to use the trademark. *Id.* ¶ 29.

## II.
## LEGAL STANDARD

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may seek to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive

a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Id.* (citing *Twombly*, 550 U.S. at 555). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id.*

## B. Motion to Strike

California's anti-SLAPP statute "permits a defendant to pursue early dismissal of meritless lawsuits arising from conduct by the defendant in furtherance of the right of petition or free speech." *Greater L.A. Agency on Deafness, Inc. v. Cable News Network*, 742 F.3d 414, 419 (9th Cir. 2014); Cal. Civ. Proc. Code § 425.16. Resolution of an anti-SLAPP motion calls for a two-step procedure. *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 733 (2003). First, the defendant must show that the challenged action arises from protected activity—*i.e.*, "the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue[.]'" *See id.* (quoting Cal. Civ. Proc. Code § 425.16(b)(1)). If the court determines that the plaintiff seeks relief "based on allegations arising from activity protected by the statute, the second step is reached." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016). The second step requires the plaintiff to demonstrate a probability of prevailing on his or her claims. *LaMarche*, 31 Cal. 4th at 733; *Navellier v. Sletten*, 29 Cal. 4th 82, 88–89 (2002) ("the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited") (internal quotations omitted).[3]

During the second step's analysis, the Court examines the basis of the anti-SLAPP motion and then analyzes the merits of the plaintiff's claim under either the federal motion to dismiss or summary judgment standard, depending on whether the motion challenges the legal sufficiency or the factual sufficiency of the claim. *See Penrose Hill, Ltd. v. Mabray*, 479 F. Supp. 3d 840, 848–49 (N.D. Cal. Aug. 18, 2020) (citing *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833–34 (9th Cir. 2018)).

---

[3] Although there are exceptions to the anti-SLAPP statute, *see* Cal. Civ. Proc. Code § 425.17, no parties argue that they apply in this case.

California and federal courts also differ with respect to granting leave to amend if an anti-SLAPP movant succeeds. California courts do not grant leave to amend. *Simmons v. Allstate Ins. Co.*, 92 Cal. App. 4th 1068, 1073 (2001) (leave to amend following successful anti-SLAPP motion in state court "would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy"). Federal courts, on the other hand, employ Rule 15(a)'s more liberal policy of generally granting a plaintiff leave to amend his first Complaint. *See Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) ("[T]he purpose of the anti-SLAPP statute, the early dismissal of meritless claims, would still be served if plaintiffs eliminated the offending claims from their original complaint."); *Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1140 (C.D. Cal. 2015), *aff'd*, 853 F.3d 1004 (9th Cir. 2017) ("[I]t is generally error to grant a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend.") (citing *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004)).

If the Court grants leave to amend, anti-SLAPP remedies, including fees and costs, remain available after amendment if the offending claim is reasserted. *Verizon Del. Inc.*, 377 F.3d at 1091.

## III.
## DISCUSSION

Defendants move to dismiss and strike all of Plaintiffs' claims against them.

### A. Local Rule 7-3 Compliance

Defendants submitted a so-called "Meet and Confer Declaration" with both motions which stated "this Motion is made following an attempt at informal resolution of this matter during multiple conferences with Plaintiff's [sic]." MTD at 11; MTX at 4. In support of their Opposition briefs, Plaintiffs' counsel submitted a sworn declaration stating that the conference to which Defendants refer in their statement barely touched on the topic of a motion to dismiss or anti-SLAPP motion, and certainly did not discuss their substance: "At no point during this telephonic meet and confer did Mr. Spigner definitely say either Defendant was going to actually bring [either motion], the basis or substance of any such motion, or any potential resolution to avoid the same." Decl. of Meeghan H. Tirtasaputra ISO Pls.' Opp. to Ds.' MTD ("Tirtasaputra Decl.") ¶ 5 [Doc. ## 43-1, 46-1]. Tirtasaputra also attests that "[i]n fact, Mr. Spigner asked me to sign a stipulation contemplating an extension of time for Peterson to file a responsive pleading, communicated that his clients would make a settlement offer in exchange for signing

the stipulation, filed the stipulation, then subsequently filed Peterson's [motion to dismiss/anti-SLAPP motion] anyway." *Id.* ¶ 7.

Local Rule 7-3 makes clear that its purpose is to ensure that parties discuss "the substance *of the contemplated motion* and any possible resolution." C.D. Cal. L.R. 7-3 (emphasis added). If what Plaintiffs say is true, Defendants' statement that they complied with Local Rule 7-3, at best, is inaccurate or misleading. The Court will address the substance of the Motions, because they have been fully briefed, but reminds Defendants that any future failure to comply with the Local Rules, or misrepresentations to the Court, will result in the imposition of sanctions.

**B. Motion to Dismiss**

**1. Standing and Capacity to Sue**

Defendants argue that Nicholson and Treadway do not have authority to maintain actions on behalf of the band. MTD at 4–5. Their briefing ignores the California Corporations Code section 16405(b) cited by Plaintiffs, which explicitly provides that partners in a partnership may maintain an action against another partner for legal or equitable relief to enforce their rights under the partnership agreement. MTD Opp. at 6 (citing Cal. Corp. Code § 16405(b)). Indeed, Defendants' argument that Nicholson and Treadway may not assert claims on behalf of the partnership is contradicted by California's Uniform Partnership Act, which states that all property acquired by a partnership belongs to the partnership, and not the individual partners. *Id.* (citing Cal. Corp. Code §§ 16203, 16401(g)). Accordingly, "[a] partnership may maintain an action against a partner for breach of the partnership agreement, or for the violation of a duty to the partnership[.]" *Id.* at 6–7 (emphasis deleted) (citing Cal. Corp. Code § 16405(a)). It is a breach of this duty to use intellectual property of the partnership to compete with the partnership, as Plaintiffs allege Defendants have done here. *See* Cal. Corp. Code § 16404(b)(3); *see also, e.g.*, Compl. ¶¶ 44–45, 57, 70–72.

Accordingly, partners can sue co-partners to enforce these rights, especially where the wrongful acts are alleged to be not only a breach of the fiduciary duty but also an independent tort "where the tort is of such a nature that it not only terminates the partnership but wrongfully destroys it, and where the erring partner converts to his own use its entire assets." *Laughlin v. Haberfelde*, 72 Cal. App. 2d 780, 788 (1946).

In their Reply, Defendants assert that Nicholson and Treadway ceased being members of the Partnership in 1988 and therefore cannot exercise the right to sue. MTD Reply at 2–4. But

the Complaint alleges that "[t]o date, Nicholson continues to distribute any and all royalties received from the sale of the Partnership's albums with no objection" from Peterson and Evans. Compl. ¶ 18. The royalty payments are insufficient, without more, to *form* a partnership, but do demonstrate continued performance of the terms of the pre-existing partnership agreement. *See City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 389 (2008). Moreover, California law lays out specific parameters for when a partner is officially disassociated with a partnership, none of which are alleged in this case. *See* Cal. Corp. Code § 16601 ("Events causing dissociation").

Lastly, Defendants argue that "[i]t is settled law that band members, and former-band members cannot sue each other for trademark infringement," and that "[a] co-owner cannot infringe the mark it owns." MTD at 6. This argument conflates the Mark and the Partnership, which are distinct. *See* Compl. ¶ 11. The Complaint alleges that it is the Partnership, not any of the individuals in this litigation, which is the sole owner of the Mark. *Id.* ¶¶ 22, 33, 64. Accordingly, the Complaint clearly states that the trademark infringement claims are brought by Cryptic Slaughter, not Nicholson and Treadway. *See id.* ¶¶ 44–47, 49–54, 76–97.

Taking all the facts in the Complaint as true, as the Court must on a motion to dismiss, Nicholson and Treadway still have the right to sue on behalf of the Partnership, the sole owner of the Mark.

**2. Statute of Limitations**

Defendants also aver that Plaintiffs' claims are barred under the relevant statutes of limitations: two years for the breach of contract and quantum meruit claims and three years for the unjust enrichment claims. MTD at 7–8. Since the Complaint only challenges the actions taken starting in December 2020, at the time that Plaintiffs discovered the allegedly unlawful use of the Mark, Plaintiffs' claims fall within the statute of limitations. *See* MTD Opp. at 11–12; Compl. ¶¶ 23–31.

**3. Supplemental Jurisdiction**

Since this Court has jurisdiction over Plaintiffs' Lanham Act claims, and the state law claims "form part of the same case or controversy" as the federal claims, this Court has supplemental jurisdiction over Plaintiffs' state law claims. 28 U.S.C. § 1367(a).

### C. Anti-SLAPP Motion to Strike[4]

#### 1. Federal Claims

Since California's anti-SLAPP statute does not apply to federal law causes of action, Defendants' MTX is **DENIED** with respect to Plaintiffs' Lanham Act claims. *See* MTX Opp. at 9–10 (citing *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010)); *see also Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progess*, 735 F. App'x 241, 247 (9th Cir. 2018). Defendants concede this argument in their Reply. *See* MTX Reply at 2.

#### 2. State Law Claims

The first step in evaluating an anti-SLAPP motion to strike is to determine whether the defendant has made a *prima facie* showing that "the challenged cause of action is one arising from protected activity." *Navellier*, 29 Cal. 4th at 88. Here, Defendants contend that "the law is clear that the act of filing a trademark application . . . is protected by the anti-SLAPP statute as a writing made before an executive or other official proceeding authorized by law." MTX at 8 (citing *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 596 (9th Cir. 2010)). They also argue that the claims arise from live musical performances, which also "fall within the fourth category of protected activity under the anti-SLAPP statute," *i.e.*, conduct protected by the First Amendment. MTX Reply at 4.

Plaintiffs contend that to be protected by the anti-SLAPP statute, Defendants' protected activity must be the "gravamen" of the complaint, rather than merely a "collateral allusion[] to protected activity." MTX Opp. at 10 (quoting *Robles v. Chalilpoyil*, 181 Cal. App. 4th 566, 575 (2010)). Put differently, "[t]he mere fact an action was filed after protected activity took place does not mean it arose from that activity." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 76–77 (2002).

The test to ascertain the "gravamen" of a claim for this purpose is laid out in *Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC*, 154 Cal. App. 4th 1273, 1284–85 (2007) ("*1105 Alta Loma*"). In that case, the California Supreme Court explains that a claim for relief is not "based on" protected activity for the purposes of an anti-SLAPP motion "if a plaintiff could have brought the same claim regardless of the activity the defendants assert is protected." MTX Opp. at 11 (citing *1105 Alta Loma*, 154 Cal. App. at 1284–85).

---

[4] The Court has reviewed Plaintiffs' evidentiary objection to the Declaration of Les Evans in Support of Peterson's MTX. [Doc. # 44.] Since the Court need not rely on that declaration in reaching its conclusion, the objection is **OVERRULED** as moot.

Here, Plaintiffs argue that their state law claims "would be viable if all that was alleged was that Defendants used the Mark in commerce without authorization from Plaintiffs to do so, even without federal registration of the Mark."[5] MTX Opp. at 11. In support of this argument, they identify five examples of allegations that describe "independently wrongful and infringing conduct" for which claims would exist without the registered Mark, centering around breaches of the partnership agreement. *Id.* at 11–12 (citing Compl. ¶¶ 26–31, 36, 37).

The Court agrees that the "act[s] giving rise to liability" center around Defendants' unauthorized use of the Mark, not the registration itself. *See Park v. Board of Trustees of Cal. State Univ.*, 393 Cal. 5th 1057, 1066 (2017). "Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.'" *Callanan v. Grizzly Designs, LLC*, 81 Cal. App. 5th 517, 526 (2022) (citing *Park*, 393 Cal. 5th at 1062) (quotation and citations omitted)). The fact that the use of the Mark involves live musical performances is also ancillary to the main issue in this case, which is a dispute over the permitted uses of intellectual property owned by a partnership. Defendants do not have a free speech right to use the Mark without the consent of its co-owners. *Cf. Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010) (holding that suit "arose from" protected act because "[e]ach of Mindys' causes of action arises not out of a general breach of duty, but out of Kamran's act of filing the trademark application in Sonya's name."). The registration of the trademark may have "triggered" Plaintiffs' lawsuit, but the action does not "arise from" that action itself. *See Navellier*, 29 Cal. 4th at 89 (citation omitted).

Because the Court concludes that Defendants cannot satisfy the first prong of the anti-SLAPP statute and show that the challenged causes of action "aris[e] from protected activity," *id.*, the Court **DENIES** Defendants' MTX.

**3. Attorney's Fees**

Finally, both sides seek to recover their attorney's fees for litigating this motion. MTX at 13; MTX Opp. at 20–22. California's anti-SLAPP statute provides that the court must award fees to a prevailing defendant on an anti-SLAPP motion. Likewise, a court must award fees to a prevailing plaintiff if the court finds an anti-SLAPP motion is "frivolous or is solely intended to cause unnecessary delay." Cal. Civ. Proc. Code § 425.16. Here, the Court does not find that the MTX was "totally and completely without merit or for the sole purpose of harassing" Plaintiffs.

[5] The "Mark" refers to the name "Cryptic Slaughter" and related intellectual property, which the partnership owns and has used in connection with its products and services since its formation in 1985. The Mark has "further acquired secondary meaning" through its association with "a single source of products and services." Compl. ¶ 11.

*Id*. § 128.5(b)(2). While Defendants were ultimately unsuccessful, the Court's decision required it to analyze the role of important First Amendment rights such as trademark registration and live music performances. The Court therefore declines to award fees to either side.

## IV.
## CONCLUSION

In light of the foregoing, the Court **DENIES** Defendants' MTD and MTX. Defendants shall file an Answer by **May 26, 2023**.

**IT IS SO ORDERED.**